**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-81290-RLR**

SPENCER BUENO,

    Plaintiff,

v.

ARHAUS, LLC,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Spencer Bueno ("Bueno") brings this action against his former employer, Defendant Arhaus, LLC ("Arhaus"), alleging employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq. See* DE 8 ¶¶ 1, 26, 28; DE 24 at 3. Defendant filed a Motion for Summary Judgment [DE 16], which has been fully briefed and is ripe for review.   For the reasons discussed below, the Motion for Summary Judgment is **GRANTED**.  The Clerk is ordered to **CLOSE** the case.

**I.   BACKGROUND[1]**

Arhaus, a furniture retailer, hired Bueno as a Full-Time Design Consultant beginning November 1, 2021. DE 17 ¶ 2.  Bueno worked at Arhaus's store in Boca Raton and reported to the Store Manager, Anthony McKenna. *Id.* ¶¶ 1, 4.

---

[1] The background facts rely primarily on undisputed facts.  When disputed, the Court notes the dispute and views all facts in the light most favorable to Bueno.

Bueno suffers from anxiety and depression.[2] *See* DE 24 at 6 n.2.  When Bueno applied for a job at Arhaus, he declined to answer whether he had any disabilities. DE 17 ¶ 3.  Bueno did not mention his anxiety or depression when he interviewed with McKenna. *Id.*  However, he claims he discussed having a "disability," specifically anxiety, during his interview with Arhaus's Regional Manager Kim Rauen. *Id.* ¶ 9; DE 23 ¶ 6.  They discussed possible accommodations, but Bueno did not tell Rauen that he anticipated missing work because of his depression and anxiety. DE 23 ¶¶ 6, 9.

Bueno received a copy of Arhaus's Employee Handbook when he was first hired.  DE 17 ¶ 10; DE 23 ¶ 10.  The Handbook outlined the company's attendance and leave of absence policies. DE 17 ¶ 10; DE 23 ¶ 10; DE 17-5 at 19, 55.  Under "Leaves of Absence," the Handbook states that "[w]ith any Leave of Absence, Arhaus requires the [employee] to maintain regular communication with their manager and Human Resources every two weeks." DE 17-5 at 19.  If an employee is going to miss work, the Handbook requires them to "personally notify [their] supervisor *at least one hour in advance* of the start of [their] shift." DE 17-5 at 55 (emphasis in original).  It warns employees that they "may be terminated at any time for failing to report to work without contacting the Company." *Id.*  Shortly after Bueno began work, McKenna specifically instructed Bueno to give advance notice if he was ever going to miss work. DE 17 ¶ 14; DE 23 ¶ 14.

This lawsuit revolves around Bueno's early departure and absences from work between January 30 and February 21, 2022.  On January 30, Bueno left work early. *See* DE 17 ¶ 15; DE 23

---

[2] Arhaus does not dispute that Bueno suffers from depression and anxiety. *See generally* DE 17 ¶¶ 6, 7, 17, 40. However, Arhaus disputes the severity of Bueno's mental health conditions and its knowledge about those conditions, and it argues that Bueno's depression and anxiety do not rise to the level of a disability under the ADA. *See id.*

¶ 15.   Bueno says he told McKenna and another store manager, Vera Cohen, before leaving the store that morning. DE 23 ¶ 15.   That afternoon, Bueno texted McKenna saying:

> Sorry I had to bounce.  Having some type of cluster headache with anxiety.  I'll be taking a professional tomorrow [*sic*].  I think it's just stress.

DE 17-6.   The parties dispute whether Bueno was scheduled to work the following day, January 31. *Compare* DE 17 ¶ 16 *with* DE 23 ¶ 16.   Bueno testified that he was not scheduled to work, and therefore admits that he did not report to work. *See* DE 23 ¶ 16.   That afternoon, Bueno texted McKenna saying:

> Hey Anthony, I'm going to stay back.   I didn't know that the headache thing could be covid stuff.

DE 17-6.   Bueno claims that he sent this text message to inform McKenna that he would not be coming in the *following* day, February 1. DE 23 ¶ 18.   Bueno did not show up for his scheduled shift at 10:00 A.M. on February 1. *See id.*; DE 17 ¶ 18.   McKenna texted Bueno at 11:44 A.M. that morning to ask if Bueno had gotten a Covid-19 test and asking why Bueno did not call in for his shift that morning. DE 17-6.   Bueno did not respond until 4:24 P.M., at which time he texted McKenna a photograph of a doctor's note which read:

> Please excuse Spencer Bueno from work from 1/30/22-2/20/22 due to stress and anxiety.  He can return 2/21/22 as long as he is feeling better.

*Id.*  This was the only medical documentation Bueno gave to Arhaus during his employment. *See* DE 17 ¶¶ 17–18; DE 23 ¶¶ 17–18.

After receiving the doctor's note, Arhaus placed Bueno on leave and scheduled him to return to work on February 21 at 10:00 A.M. *See* DE 17 ¶ 20; DE 23 ¶ 20.   On February 10, Arhaus gave Bueno instructions on how to initiate a short-term disability leave, but Bueno never replied or applied for short-term disability benefits. DE 17 ¶ 21; DE 23 ¶ 21.   Bueno did not communicate

with his supervisors or human resources officers while he was on leave. DE 17 ¶ 22; DE 23 ¶ 22. He did not ask to extend his leave or provide documentation saying he could not return to work as scheduled. *Id.* Bueno did not report to work on February 21. DE 17 ¶ 25; DE 23 ¶ 25. Bueno and Arhaus agree that Arhaus terminated Bueno on February 21, but they dispute the circumstances surrounding the termination. *See id.*

According to Bueno, Arhaus's internal emails show that his supervisors and human resources decided to terminate him several days before his scheduled return. DE 23 ¶ 25; DE 17-8. On February 19, McKenna sent Rauen an email with the subject line "Spencer Bueno Termination Documentation." DE 17-8 at 5–6. McKenna said he was "making sure" he had his "ducks in a row for Monday," February 21. *Id.* McKenna forwarded that email to the director of human resources on February 20. *Id.* at 5. At 9:56 A.M. on February 21—four minutes before Bueno's shift was scheduled to begin—the director of human resources responded saying he spoke with McKenna, and they were "aligned with termination based on three things." *Id.* at 4. The email listed Bueno's early departure without notice on January 30 and his failure to notify McKenna before his absences on January 31 and February 1. *Id.* At 10:38 A.M., Rauen replied to the thread and told everyone that Bueno did not show up for his shift that morning, and therefore she was "absolutely 'aligned' with termination." *Id.* The email chain continued and discussed mechanics for the termination. *Id.* at 1–4. On February 23, two days after terminating Bueno, the director of human resources emailed McKenna with "adjustments" to the termination documents, and he added a fourth line to the list of reasons for termination: "1/21 – No Call No Show – did not return per his doctors note."[3] *Id.* at 1.

---

[3] Presumably the date "1/21" was a typo and should have read "2/21." The parties do not take issue with the typo, so the Court will not either.

Bueno says he learned about his termination before his shift was scheduled to begin on February 21. DE 23 ¶ 25.  Bueno believed he was terminated before his shift because he was removed from an employee WhatsApp group chat that morning. *See* DE 17-2 at 132.[4]  Later in the day, McKenna called Bueno and left a voicemail formally terminating Bueno. *Id.* at 174.  Arhaus sent Bueno a final termination later a few days later on February 24. DE 17 ¶ 32; DE 23 ¶ 32. According to the letter, Arhaus terminated Bueno because of four no-call-no-shows. DE 17-12 at 2.  Bueno filed this lawsuit in September 2023 alleging that Arhaus's decision to terminate him was unlawful discrimination based on his disability in violation of the ADA. *See* DE 1.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper if the record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcon v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).  Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat Investor Grp.*, 658 F.3d at 1307).  Where the non-moving party presents facts that

---

[4] According to Arhaus, McKenna removed Bueno from the WhatsApp at 7:44 P.M.—well after the formal termination—on February 21. DE 17 ¶ 30.  The record includes screenshots purporting to show when Bueno was removed from the group chat. *See* DE 17-10; DE 17-11.  The two screenshots lack time stamps showing when McKenna removed Bueno, and the transcript of the chat group does not line up with the messages in either screenshot. *See id.*  Given these discrepancies, at the summary judgment stage, the Court presumes that Bueno's testimony is correct and that he was removed from the group chat before his shift was scheduled to begin on February 21.

contradict the facts set forth by the moving party, the motion must be denied, assuming the facts in dispute are material. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "An ADA plaintiff establishes a prima facie case by showing (1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her 'on the basis of disability.'" *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023)). Arhaus argues that Bueno has not raised genuine disputes of material fact on any of these elements.

### 1. Disability

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Working is considered a "major life activity," so an impairment that substantially interferes with the ability to work is a disability under the ADA. *See id.* § 12102(2). Anxiety can qualify as a disability when it substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(h)(2).

Arhaus first argues that Bueno has not produced evidence sufficient to show that he was actually disabled, and he does not have a record of a disability. *See* DE 16 at 9–13; *see also* 42 U.S.C. § 12102(1)(A)–(B). Bueno does not offer much medical documentation as evidence of his claimed disability. He submitted photos of two prescription bottles (one from before his

employment with Arhaus and one from after his employment with Arhaus), messages between him and his doctor attempting to schedule an appointment around February 2, 2022, and the doctor's note that he sent to McKenna on February 2. *See* DE 23-6.  While the prescriptions suggest he was diagnosed with anxiety, they do not indicate that his anxiety substantially limited a major life activity.   And Bueno's testimony suggests that his anxiety may not have substantially interfered with major life activities. *See* DE 16 at 11 (citing Bueno's deposition testimony saying he could perform all job functions and never had to miss work at other jobs due to his anxiety). That leaves the doctor's note stating that Bueno was unable to work for three weeks in February 2022 because of stress and anxiety. *See* DE 23-6.  Bueno argues that the note is sufficient to create a genuine dispute as to whether he has an impairment that substantially interfered with a major life activity—working.  *See* DE 24 at 6.  Standing alone, that note does not provide enough information to support the conclusion that Bueno had a disability under the ADA. *See Carper v. TWC Servs., Inc.*, 820 F. Supp. 2d 1339, 1354 (S.D. Fla. 2011).

Even though Bueno lacks evidence of actual disability or a record of disability, Arhaus may still be liable for discrimination under the ADA if it *regarded* Bueno as having a disability and took an adverse action on the basis of that *perceived* disability. 42 U.S.C. § 12102(1)(C).  In other words, even if an employee is not by definition disabled under the ADA, if the employer *thinks* the employee suffers from a substantial impairment, then a plaintiff may still bring a discrimination claim.  This is true "whether or not the impairment . . . is perceived to limit a major life activity." *Id.* § 12102(3)(A).[5]  Bueno's February 2, 2022, doctor's note raises a genuine dispute

---

[5] Arhaus relies on outdated case law to argue that it must have regarded Bueno as having a mental impairment that substantially limited his major life activities. DE 16 at 16 (citing *Corning v. LodgeNet Inter. Corp.*, 896 F. Supp. 2d 1138, 1149 (M.D. Fla. 2012) for the proposition that an ADA plaintiff must show that the employer "perceived him as being substantially limited in a major life activity").  As the Eleventh Circuit has explained:

> Congress later amended the ADA, however, to . . . provide that a person would meet the "regarded as having such an impairment" prong of the definition if he

of material fact on this issue.  A jury could find that Arhaus regarded Bueno as having a disability before it decided to terminate him.  *See id.* § 12111(1)(C).  The doctor's note read:

> Please excuse Spencer Bueno from work from 1/30/22-2/20/22 due to stress and anxiety.  He can return 2/21/22 as long as he is feeling better.

DE 23-6 at 1.[6]  At least as of February 2, Arhaus knew that Bueno was unable to work for three weeks because of his "stress and anxiety."  *See* DE 17 ¶¶ 18, 20 (admitting McKenna read the note and Arhaus placed Bueno on medical leave for three weeks).  Other record evidence suggests that Arhaus knew Bueno struggled with anxiety before his medical leave. *See* DE 23 ¶¶ 6, 25; DE 17 ¶ 9; DE 17-6.  Whether or not Arhaus regarded Bueno as disabled prior to February 2, the doctor's note and resulting medical leave would allow a jury to find that Arhaus regarded Bueno as having a disability before it decided to terminate him.  That is sufficient to survive summary judgment on the disability element.

### 2.    Qualified Individual

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).  Courts should consider an employer's judgment when defining the essential functions of a particular position, although the employer's judgment is not necessarily conclusive.  *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 943 (11th Cir. 2017).  "In certain situations,

---

shows that he has been subjected to an action prohibited by the ADA on the basis of an actual or perceived physical impairment, "whether or not the impairment limits or is perceived to limit a major life activity."

*Andrews v. City of Hartford*, 700 F. App'x 924, 926 (11th Cir. 2017) (quoting 42 U.S.C. § 12102(3)(A)). Either way, the doctor's note creates a genuine dispute of fact such that a jury could find that Arhaus knew of the claimed disability (anxiety) *and* could have perceived that the impairment substantially limited his life activities (inability to work for lengthy periods of time).

[6] Arhaus questions the credibility of this doctor's note, pointing out that it was from a clinic in San Diego, California (even though Bueno lived and worked in Florida), it did not include a medical diagnosis, and it was signed by a physician's assistant rather than a medical doctor. *See* DE 17 ¶ 19.  Those critiques may be valid, but the Court views the evidence in the light most favorable to Bueno and takes the note at face value.

regular daily attendance may be an essential function of a position." *Dickerson v. Sec'y, Dep't of Veterans Affs.*, 489 F. App'x 358, 360 (11th Cir. 2012) (citing *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994)).

Arhaus argues that Bueno cannot show that he is a "qualified individual" under the ADA because Bueno's "inability to attend work on a regular basis rendered him unqualified for the position as a Full-Time Design Consultant." DE 16 at 19.   During his deposition, Bueno agreed "that attendance at work is an essential function" at Arhaus because it is "sales driven." DE 17-2 at 156.  McKenna stated that "regularly and reliably attending work is an essential function" of Bueno's position. DE 17-1 ¶ 30.  And the Employee Handbook stated that "[a]bsenteeism or tardiness, even for good reasons, is disruptive of [Arhaus's] operations and interferes with [its] ability to satisfy [its] customers' needs." DE 17-5 at 56.   The record therefore supports the conclusion that attendance is an essential function of Bueno's position.[7] *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1366 (11th Cir. 2000) (holding that punctuality was an essential function for a store area coordinator).  Bueno's anxiety interfered with his ability to perform this essential function, as evidenced by his three-week leave of absence in February 2022. *See* DE 23 ¶ 19; DE 24 at 6 n.2.

Because attendance is an essential job function, the issue then becomes whether Bueno could reliably attend work with a reasonable accommodation. *See* 42 U.S.C. § 12111(8).  "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee." *Earl*, 207 F.3d at 1367 (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997)).  The employee also bears the burden to show that the proposed accommodation is reasonable. *See Monroe v. Fla.*

---

[7] Cumulatively, this evidence supports the conclusion that attendance was an essential job function for a Full-Time Design Consultant.  To the extent Bueno disputes this conclusion, he does not cite any record evidence to support the opposite conclusion. *See* DE 23 ¶ 33.

*Dep't of Corr.*, 793 F. App'x 924, 927 (11th Cir. 2019) (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 284–86 (11th Cir. 1997)).

Bueno says he was able to perform his job with the reasonable accommodation of a three-week medical leave, which he received as requested. DE 24 at 9; DE 23 ¶ 25.  "While a leave of absence might be a reasonable accommodation in some cases," the employee must point to evidence that would allow a jury to infer that he would return to work and regularly attend work after the leave ended. *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003).  "[B]ecause the ADA covers people who can perform their essential job functions *in the present or immediate future*, requests for indefinite leave so an employee can work 'at some uncertain point in the future' are inherently unreasonable." *Monroe*, 793 F. App'x at 927 (quoting *Wood*, 323 F.3d at 1314) (emphasis added).

Bueno argues that his requested leave "was short, definite and allowed him to be able to perform his essential job functions upon his scheduled return of February 21st." DE 24 at 9.  But this argument runs into a fatal flaw: the record evidence does not support the inference that Bueno's medical leave was temporary and therefore reasonable.  The only evidence Bueno cites is his February 2 doctor's note. *Id.*  But that note did not say that Bueno's requested leave would be "short" or "definite," as he argues. *Id.*; *see also* DE 23-6 at 1.  In fact, that note *did not* say (as Bueno argues) that he was cleared to return on February 21 without any restrictions. *See* DE 23-6. The note said Bueno could return on February 21 "*as long as he [was] feeling better*." *Id.* (emphasis added).  Bueno never confirmed his return date, and he did not notify Arhaus that he was able to return to work as scheduled. *See* DE 17 ¶ 22; DE 23 ¶ 22.  The Employee Handbook requires Arhaus employees "to maintain regular communication with their manager and Human Resources every two weeks during a Leave of Absence." DE 17-5 at 19.  Bueno did not do so. *See*

DE 17 ¶ 10; DE 23 ¶ 10.  The doctor's note said he could return on February 21 *only if* "he [was] feeling better," DE 23-6 at 1, but Bueno did not tell Arhaus whether he was "feeling better." *See* DE 17 ¶¶ 10, 22; DE 23 ¶¶ 10, 22.  Nor did he indicate that he needed any other reasonable accommodation in order to come back to work full-time. *See* DE ¶¶ 10, 22; DE 23 ¶¶ 10, 22.

In light of these undisputed facts, Bueno's proposed reasonable accommodation was effectively a request for indefinite leave, which the Eleventh Circuit has repeatedly rejected as an unreasonable accommodation. *See Ypsilantis v. Yellen*, No. 22-CV-61514, 2023 WL 7524107, at *14 (S.D. Fla. Nov. 14, 2023), *appeal dismissed sub nom.* No. 23-14042, 2024 WL 122502 (11th Cir. Jan. 11, 2024) (collecting cases).  "[I]t is inherently unreasonable as an ADA . . . reasonable accommodation for an employee to request leave without providing a date when the employee can return to work." *White v. Elegant Beauty Supplies, #49, Inc.*, No. 22-61934-CIV, 2023 WL 3711005, at *3 (S.D. Fla. May 2, 2023) (citing *Monroe*, 793 F. App'x at 927).  The Eleventh Circuit rejected a similar ADA discrimination claim after finding that the plaintiff could not meet his burden of showing he could work with a reasonable accommodation. *See Monroe*, 793 F. App'x at 927.  In *Monroe*, the court held that the plaintiff's requested accommodation for medical leave was a request for *indefinite* leave because the plaintiff's "doctor did not give, and could not have given, a date when [plaintiff] could return to work." *Id.*; *see also Wood*, 323 F.3d at 1314 (finding request for leave unreasonable when evidence suggested that plaintiff "might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence" and therefore plaintiff "was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future—at some indefinite time"); *McNeal v. Macon Cnty. Bd. of Educ.*, No. 23-10410, 2024 WL 4040838, at *3 (11th Cir. Sept. 4, 2024) (holding request for medical leave was not a reasonable

accommodation because the plaintiff's return date was uncertain); *Duncan v. N. Broward Hosp. Dist.*, No. 22-CV-62298, 2024 WL 962357, at *15 (S.D. Fla. Mar. 6, 2024) (granting summary judgment and finding that plaintiff's proposed accommodation was unreasonable because "Plaintiff d[id] not point the Court, nor d[id] the Court find, an instance where Plaintiff gave Defendant a *definite* date for her return to work," and her return depended on a later "medical re-evaluation" (emphasis added)).

For the reasons stated above, Bueno has not pointed to evidence from which a jury could find that February 21 was the *definite* end date for his medical leave. The doctor's note left his return-date open, and he never communicated his intent or ability to return on that date. Accordingly, viewing the record evidence in Bueno's favor, he has not raised a genuine dispute of material fact concerning his status as a "qualified individual" under the ADA.

* * *

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 16] is **GRANTED**. The Defendants shall submit a proposed final judgment in Microsoft Word format within two business days of the date of rendition of this order at rosenberg@flsd.uscourts.gov. As no active claims remain in this case, the Clerk of the Court shall mark the case as **CLOSED**. All other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 20th day of September, 2024.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE